IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN FINEMAN, | No. C 11-05680 SI |
| Plaintiff, | **ORDER GRANTING MOTION TO DISMISS** |
| v. | |
| SONY NETWORK ENTERTAINMENT INTERNATIONAL LLC, et al., | |
| Defendants. | |

Currently before the Court is defendants' motion to dismiss plaintiff's complaint, which is set for hearing on February 10, 2012. Pursuant to Civil Local Rule 7-1(b), the Court determines the matter is appropriate for submission without oral argument, and hereby VACATES the hearing. For the reasons set forth below, the Court GRANTS defendants' motion and dismisses the complaint with limited leave to amend.

**BACKGROUND**

Plaintiff filed this class action lawsuit on November 28, 2011, alleging causes of action for unfair business practices under California's Unfair Competition Law ("UCL," Business and Professions Code § 17200) and tortious breach of the implied covenant of good faith and fair dealing. Plaintiff alleges that the Sony defendants engaged in unfair and tortious conduct when, in September 2011, they required Sony PlayStation 3 ("PS3") owners to agree to a new "Sony Entertainment Network Services' Terms of Service and User Agreement," ("Agreement") in order to access the Sony PlayStation Network and Sony Entertainment Network Services (collectively, "PSN), an online gaming and entertainment

network. Complaint, ¶ 1. The imposition of the Agreement was unfair, plaintiff argues, because without any consideration the Agreement altered the parties' contractual relationship and imposed for the first time requirements that PSN users agree to submit disputes between the user and Sony to arbitration and waive their right to resolve disputes through a class action. *Id*. Users had to accept the terms of the Agreement in order to continue accessing the PSN. *Id.*, ¶ 2. Users were able to opt out of the arbitration clause and class action waiver provisions, after they agreed to the Agreement. *Id.*, ¶ 18. However, plaintiff alleges that defendants put up barriers and discouraged users from opting out by imposing onerous requirements, including requiring opt outs to be submitted in a written notice by mail. *Id.*

Defendants move to dismiss the complaint, arguing that plaintiff does not have standing under the UCL – which requires a showing that plaintiff lost "money or property" as "a result" of defendants' conduct – and because no cause of action for tortious breach of the implied covenant of good faith and fair dealing exists under California law outside of insurance coverage disputes. Plaintiff opposes that motion and the matter is now before the Court.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

**1.    UCL Claim**

In order to have standing to prosecute a UCL claim, a plaintiff must show that he or she has "lost money or property" as a result of defendants' conduct. Bus. & Prof. Code 17204. "The plain import of this is that a plaintiff now must demonstrate some form of economic injury." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011). However, there "are innumerable ways in which economic injury from unfair competition may be shown. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." *Id*. The Ninth Circuit in *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010), found that a plaintiff had adequately alleged economy injury, and therefore had standing under the UCL, where defendant's practice gave plaintiff a choice to close a credit card account and lose access to the credit, or keep the account open and accept an increased APR.

Plaintiff alleges that the PS3 was "bundled with access to the PSN, such that a portion of the purchase price paid by Plaintiff and Class Members to [defendants] was for access to the PSN." *Id*., ¶ 13. Plaintiff alleges that he has lost money or property because the imposition of the class action waiver provision has "reduced the value of the[] PS3 and PSN access," because he had to give up his valuable right to pursue class action litigation in order to secure continued access to the PSN. *See, e.g.,* Complaint., ¶ 35. Plaintiff also alleges that if he had declined the Agreement, his PS3 would be substantially devalued as he would have lost access to the PSN. *Id*., ¶ 37. Plaintiff argues that these allegations are similar to those accepted in *Rubio v. Capital One Bank*, and demonstrate that he has

3

suffered an economic injury. *See* Oppo. at 6-7.

The Court finds that plaintiff has failed to allege a sufficient economic injury sufficient to confer standing under the UCL. Plaintiff acknowledges that he made a choice and agreed to the arbitration and class action waiver provisions of the Agreement and did not opt out. Therefore, the only type of economic harm he can allege is the giving up of his right to bring a class action. This "harm," however, is too conjectural to support a finding of economic injury here and now. *See Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545, 1554 (Cal. App. 2011) (economic injury must be "concrete and particularized" and "'actual or imminent,' not 'conjectural' or 'hypothetical.'"). Plaintiff himself explains that "if" defendants engage in "wrongdoing" in the future, he will only be able to seek relief in an individual arbitration which is "unlikely" to be cost effective. *Id.*, at 7. However, plaintiff cannot allege that defendants will engage in wrongdoing in the future, that he would pursue a remedy for that unknown wrongdoing, or that the type of harm he suffered would not be cost effective to resolve through an individual arbitration. By his own argument, plaintiff demonstrates that he has not, as of this date, suffered a concrete and particularized economic injury.[1]

Plaintiff has provided the Court with supplemental authority in support of his position. The case, *In re: American Express Merchants' Litigation*, 2012 U.S. App. LEXIS 1871 (2d Cir. Feb. 1, 2012), is largely inapposite as it addresses whether a particular class action waiver provision is enforceable, a question both sides agree is before this Court. However, the reasoning underlying the Second Circuit's decision is instructive here. The Second Circuit found that plaintiffs had made an evidentiary showing that because of the nature of the particular claim at issue – a federal antitrust claim where extensive expert testimony on the nature of the market was required – the claim could not be effectively vindicated in an individual arbitration action. *Id.*, at *35-36 ("the cost of plaintiffs' individually arbitrating their dispute with Amex would be prohibitive, effectively depriving plaintiffs of the statutory protections of the antitrust laws."). No such showing has been made or alleged here, because plaintiff can only

---

[1] The allegations in this case, therefore, are distinguishable from the case plaintiff relies on. In *Fraley v. Facebook, Inc.*, 2011 U.S. Dist. LEXIS 145195 (N.D. Cal. Dec. 16, 2011), the Court found that plaintiffs had adequately alleged a right to be paid for their endorsements, which had allegedly been misappropriated by defendant. *Id.*, *68-69. That right was concrete and particularized, even if it hadn't been quantified.

4

speculate as to what type of wrongdoing defendants may engage in in the future.

Plaintiff's UCL claim is DISMISSED without leave to amend.

### 2. Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing

Defendants argue that under California law, there is a "general rule precluding tort recovery for noninsurance contract breach" claims. *See Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal. 4th 85, 102 (1995). As the California Supreme Court has explained, "[b]ecause the covenant of good faith and fair dealing essentially is a contract term that aims to effectuate the contractual intentions of the parties, 'compensation for its breach has almost always been limited to contract rather than tort remedies.' . . . At present, this court recognizes only one exception to that general rule: tort remedies are available for a breach of the covenant in cases involving insurance policies." *Cates Construction, Inc. v. Talbot Partners*, 21 Cal. 4th 28, 43 (1999) (internal citations omitted).

Plaintiff first argues that the *Freeman* rule is not applicable because "[p]laintiff here is not alleging a breach of any agreement between the parties. . . ." Oppo. at 13. However, "[a]lthough breach of the implied covenant often is pleaded as a separate count, a breach of the implied covenant is necessarily a breach of contract." *Digerati Holdings, LLC v. Young Money Entertainment, LLC*, 194 Cal. App. 4th 873, 885 (Cal. App. 2011). Plaintiff also relies on cases which simply recognize claims seeking *contractual* damages for breaches of the implied covenant. *See, e.g., Guz v. Bechtel National, Inc.*, 24 Cal. 4th 317, 349 (2000).

Here, plaintiff is admittedly not seeking contractual remedies for the breach of the implied covenant and cannot do so, as plaintiff contends where was no breach of any particular agreement. *See* Oppo. at 13. Plaintiff's claim for tortious breach of the implied covenant of good faith and fair dealing, therefore, is DISMISSED without leave to amend.

### 3. Leave to Amend to Plead a Declaratory Relief Claim

Plaintiff alleges that leave to amend should be granted in this case so that plaintiff can allege a declaratory judgment claim challenging the imposition of the arbitration and class action waiver provisions. Oppo. at 14. Defendants do not address plaintiff's request for leave to add this new claim.

5

However, this case is before the Court on an assertion of jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The Court notes that CAFA's jurisdictional minimum amount in controversy ($5,000,000) cannot be met on a declaratory relief claim. As such, the Court finds that any declaratory relief action should proceed in state court. However, in light of California's res judicata doctrine and the primary right theory, *see, e.g., Lincoln Property Co., N.C., Inc. v. Travelers Indemnity Co.*, 137 Cal. App. 4th 905, 912 (Cal. App. 2006), and out of an abundance of caution, the Court will GRANT plaintiff leave to add his declaratory judgment. If plaintiff chooses to amend and add his declaratory relief claim, after the amended complaint is filed, the Court will sua sponte dismiss the claim for lack of jurisdiction, thereby preserving the opportunity for plaintiff raise his declaratory relief challenge in state court.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motion to dismiss. Plaintiff is given limited leave to amend to state a claim for declaratory relief. Any amended complaint must be filed within ten (10) days of the date of this Order.

**IT IS SO ORDERED.**

Dated: February 9, 2012

SUSAN ILLSTON
United States District Judge